# Turner's Estate.

*Banks—National banks—Power to act as fiduciaries—Orphans' court—Refusal to approve a national bank as fiduciary—Federal Reserve Act—"Contravention of state or local law."*

A national bank, obtaining the special permit of the Federal Reserve Board, under c. 6, sec. 11, par. k, 38 Stats. 251, U. S. Comp. Stats. 1918, sec. 9794, as amended September 26, 1918, 40 Stats. 967, U. S. Comp. Stats., 1918 Supplement, 9794 K, has power to act as fiduciary in Pennsylvania.

The respective administrative differences in the federal and state legislation governing the national banking business on the one hand and the business of competing corporations of Pennsylvania on the other, do not leave the federal law "in contravention of state or local law" within the congressional purpose of preventing discrimination against national banks by competing state corporations.

After a trust company had been appointed guardian by the orphans' court, and before receiving its ward's property, the trust company duly transformed itself into a national bank; it applied to the court pursuant to the pertinent rule for approval as fiduciary and for the delivery of the property of its ward. Approval was refused upon the sole ground that the applicant was a national bank and that the federal legislation permitting national banks to act as fiduciaries was in contravention of the law of Pennsylvania; *held,* the reason was not well founded.

88, (1922).]     Statement of Facts—Arguments.

Argued October 24, 1922. Appeals, Nos. 232, 233 and 234, Oct. T., 1922, by Corn Exchange National Bank of Philadelphia, from decrees of Orphans' Court of Philadelphia County, April T., 1922, Nos. 219 and 343, dismissing the petition of Corn Exchange National Bank for approval as fiduciary and dismissing exceptions to adjudication in the Estate of Edna Frisbie Turner, deceased. Before PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Reversed.

Petition for approval of Corn Exchange National Bank as a fiduciary under rule XXI of the Orphans' Court of Philadelphia County and exceptions to adjudication refusing to direct distribution to the Corn Exchange National Bank as guardian.

The facts are stated in the opinion of the Superior Court.

The court below dismissed the petition and the exceptions to its adjudication. The Corn Exchange National Bank appealed individually and as guardian of the estates of Dudley B. Turner, Jr., and Edna Frisbie Turner.

*Errors assigned,* inter alia, were the decrees of the court.

*Owen J. Roberts,* and with him *C. Allison Scully,* for appellant.—The decision of the court below is in direct violation of the Act of Congress and the Constitution of the United States: First National Bank of Bay City v. Union Trust Company et al., 244 U. S. 416; In re Mollineaux, 179 N. Y. Supp. 90; Stauchfield's Est., 171 Wis. 553; Hamilton v. State, 94 Conn. 648.

*Phillippus W. Miller,* and with him *Bevan A. Pennypacker,* for appellee.—The control of fiduciaries and sureties is peculiarly the subject of state regulation. In a final analysis, the approval of a surety or appointment of a fiduciary is not a question of administration, but a question of the exercise of a reasonable, judicial discretion.

OPINION BY LINN, J., November 23, 1922:

This appeal challenges the refusal to approve a national bank as a fiduciary. Approval was denied on the single ground that the federal legislation conferring fiduciary powers on national banks is "in contravention of the law and established practice of this Commonwealth."

The question arose in distributing the estate of Edna Frisbie Turner, deceased, letters testamentary having been granted in 1920. Her minor children were beneficiaries under her will. In 1921 the court below appointed the Rittenhouse Trust Company, a corporation of Pennsylvania, guardian of the estates of the minors. On May 3, 1922, the account of the executors came on for adjudication. It showed a balance for the minors. The executors' petition for distribution stated that since its appointment as guardian the Rittenhouse Trust Company was converted into a national bank, and, thereafter was consolidated into the Corn Exchange National Bank. Distribution to the bank, as guardian, was therefore asked.

In referring to the subject, the auditing judge said: "In the matter of the National Bank of Germantown, 30 District Rep. 603, it appears that this court has refused to recognize or approve national banks for appointment as fiduciaries by this court. It does not appear that the merged corporation Corn Exchange National Bank—has been approved by this court for appointment as a fiduciary. The award to the Turner minors will therefore be made subject to the merged corporation being approved, and in the event of their failing to obtain the approval of this court, the award will be payable to a succeeding guardian when duly appointed and qualified."

Accordingly the bank then filed a petition drawn pursuant to the proper rule of court, setting forth its incorporation under the national banking law, various facts concerning its management and assets, and the

consolidation with the Rittenhouse National Bank, formerly the Rittenhouse Trust Company; that it was authorized by the Federal Reserve Board to transact a general fiduciary business; had complied with the law of Pennsylvania governing the transaction of such business; had accepted the provisions of the Act of May 9, 1889, P. L. 159, and also of the Act of May 20, 1921, P. L. 991, making itself subject to supervision and examination by the Banking Department of Pennsylvania the same as corporations of Pennsylvania.   A number of evidential exhibits were attached to the petition, among them a stipulation under rule 21, by which the applicant "hereby stipulates and undertakes irrevocably that securities and other property received by the corporation both in a fiduciary capacity and from the person or persons for whom it is surety shall not be taken out of the jurisdiction of the court and shall be kept separate and apart from all money, securities and property of the said bank so that the same can at all times be easily identified as belonging to the estate of the person or persons for whose account the same has been received, and that trust funds received by said bank either as fiduciary or for the person or persons for whom it is surety shall be deposited in a separate account in a bank or banks or trust company or trust companies other than said Corn Exchange National Bank of Philadelphia, of good standing in Philadelphia County."

On the same day the petition was refused for reasons previously given in the case of the National Bank of Germantown (supra).   From that refusal this appeal, to No. 232, October Term, 1922, was taken.

Three days later, the bank, as guardian of the estates of the children, filed another petition setting forth that pursuant to the adjudication of the executors' account, its petition for approval as fiduciary under rule 21 had been filed and dismissed; that it was advised by counsel that by specified acts of Congress with the approval of the Federal Reserve Board, it was authorized to trans-

act a fiduciary business, and, having accepted the pro-
visions of applicable state law specified, it was "fully
qualified and authorized to continue to act as guardian
of the estates of Dudley B. Turner, Jr., and Edna Frisbie
Turner, minors, and in all other fiduciary capacities,
and that the dismissal of the petition for approval under
Rule 21......was without legal justification or au-
thority." Petitioner asked for an order directing the
executors to pay to it as guardian of the estate of the
minors, the money awarded to them by the adjudication.
By supplemental adjudication, this petition was dis-
missed for the reasons previously given. Exceptions to
these adjudications were then filed; after they were
dismissed, two appeals were taken, one by the bank as
guardian, the other individually (Nos. 233 and 234,
October Term, 1922). The appeals were argued to-
gether and shall be so disposed of.

As no particular or special objection to petitioner is
made, we need consider in the light of the record the
problem as thus stated by the court below: "The ques-
tion is, therefore, raised as to whether this court should
approve them [national banks] for appointment in
fiduciary capacities and accept them as surety. We
should approve them unless the federal acts are in con-
travention of the law and established practice of this
Commonwealth": In re National Bank of Germantown,
30 District Reports 603.

The Act of Congress approved December 13, 1913, en-
acted that "The Federal Reserve Board shall be author-
ized and empowered......(k) to grant by special permit
to national banks applying therefor, when not in contra-
vention of state or local law, the right to act as trustee,
executor, administrator, or registrar of stocks and bonds
under such rules and regulations as the said board may
prescribe" (c. 6, sec. 11, par. k, 38 Stats. 251; U. S.
Comp. Stats., 1918, s. 9794). Later some definition of
the words "In contravention of state or local law" be-
came desirable, and was supplied by an amendment of

September 26, 1918 (40 Stats. 967, U. S. Comp. Stats., 1918, Supp. 9794 k). It was as follows: "(k) To grant by special permit to national banks applying therefor, when not in contravention of state or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which state banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the state in which the national bank is located.

"Whenever the laws of such state authorize or permit the exercise of any or all of the foregoing powers by state banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of state or local law within the meaning of this act.

"National banks exercising any or all of the powers enumerated in this subsection shall segregate all assets held in any fiduciary capacity from the general assets of the bank and shall keep a separate set of books and records showing in proper detail all transactions engaged in under authority of this subsection. Such books and records shall be open to inspection by the state authorities to the same extent as the books and records of corporations organized under state law which exercise fiduciary powers, but nothing in this act shall be construed as authorizing the state authorities to examine the books, records and assets of the national bank which are not held in trust under authority of this subsection.

"No national bank shall receive in its trust department deposits of current funds subject to check or the deposit of checks, drafts, bills of exchange or other items for collection or exchange purposes. Funds deposited or held in trust by the bank awaiting investment shall be carried in a separate account and shall not be used by

the bank in the conduct of its business unless it shall first set aside in the trust department United States bonds or other securities approved by the Federal Reserve Board.

"In the event of the failure of such bank the owners of the funds held in trust for investment shall have a lien on the bonds or other securities so set apart in addition to their claim against the estate of the bank.

"Whenever the laws of a state require corporations acting in a fiduciary capacity to deposit securities with the state authorities for the protection of private or court trusts, national banks so acting shall be required to make similar deposits and securities so deposited shall be held for the protection of private or court trusts, as provided by the state law.

"National banks in such cases shall not be required to execute the bond usually required of individuals if state corporations under similar circumstances are exempt from this requirement.

"National banks shall have power to execute such bond when so required by the laws of the state.

"In any case in which the laws of a state require that a corporation acting as trustee, executor, administrator, or in any capacity specified in this section, shall take an oath or make an affidavit, the president, vice-president, cashier or trust officer of such national bank may take the necessary oath or execute the necessary affidavit.

"It shall be unlawful for any national banking association to lend any officer, director or employee any funds held in trust under the powers conferred by this section. Any officer, director, or employee making such loan, or to whom such loan is made, may be fined not more than $5,000 or imprisoned not more than five years, or may be both fined and imprisoned, in the discretion of the court.

"In passing upon applications for permission to exercise the powers enumerated in this subsection, the Federal Reserve Board may take into consideration the

amount of capital and surplus of the applying bank, whether or not such capital and surplus is sufficient under the circumstances of the case, the needs of the community to be served and any other facts and circumstances that seem to it proper, and may grant or refuse the application accordingly: provided, that no permit shall be issued to any national banking association having a capital and surplus less than the capital and surplus required by state law of state banks, trust companies and corporations exercising such powers."

Since Congress has provided that if the state law "authorize or permit the exercise of..... [guardianship] by state banks, trust companies or other corporations which compete with national banks" "the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of state or local law within the meaning of this act," the decision of these appeals must depend on whether Pennsylvania permits such competing corporations to act in that capacity; if the state law so provides, the national bank must be permitted to enjoy fiduciary powers. As familiar state laws confer that power on such corporations, the learned court below misinterpreted the acts of Congress in holding them to be in contravention of the state law.

The federal legislation is constitutional, First National Bank v. Fellows, 244 U. S. 416, and the congressional power is plenary. Except as Congress permits, a state cannot stand in the way of corporate activity so authorized by Congress; such authority confers immunity from state interference, legislative or judicial: N. P. R. Co. v. North Dakota, 250 U. S. 135, and Telephone Co. v. South Dakota, 250 U. S. 163; Second Employers' Liability Cases, 223 U. S. 1; P. & R. Ry. Co. v. Polk, 256 U. S. 332, 335.

The effect of the amendment of 1918 on the Act of 1913, as a mere rearrangement of the words will show, was to authorize the Federal Reserve Board to grant

by special permit to national banks applying therefor, (having the required "capital and surplus," supra), the right to act in any fiduciary capacity in which state banks or other corporations which come into competition with national banks are permitted to act under the laws of the state in which the national bank is located, whenever the laws of such state authorize or permit the exercise of any or all such powers by state banks or other corporations competing with national banks. The congressional definition or determination of what shall not be considered in contravention of state law, for the purposes of the enactment, takes no account of the fact that details of administration in the federal system may or may not differ from administrative matters prescribed in the state system. Congress was the sole judge of the means appropriate to the end to be accomplished by the exercise of this .additional power conferred on national banks; Congress knew that throughout the states, widely divergent systems of fiduciary law prevailed. The administrative differences in which the court below found decisive conflict between state and federal law may be important elements in the competition for business and in the market may or may not operate in favor of the state corporations, but these differences in themselves, are not sufficient to deprive a national bank of the enjoyment of fiduciary powers, and particularly is that so in the circumstances disclosed by this record. See First National Bank v. Fellows (supra) ; People v. Russell, 283 Ill. 520, compared with the prior decision of the same court in People v. Brady, 271 Ill. 100; Woodbury's App., 78 N. H. 50; Hamilton v. State, 94 Conn. 648; Stanchfield's Est., 171 Wis. 553; In re Mollineaux, 179 N. Y. Supp. 90; Fidelity, etc., Trust Company v. Enright, 264 Fed. 236.

The first reason given to support its conclusion that the federal statute was in contravention of the state law, was based on comparison of provisions of the two systems concerning the deposit of trust funds. The federal pro-

vision has been quoted. For the State, the Acts of May 9, 1889, P. L. 159, and June 27, 1895, P. L. 402, provide that such "companies shall keep all trust funds and investments separate and apart from the assets of the companies, and all investments made by the said companies as fiduciaries shall be so designated as that the trust to which such investments shall belong shall be clearly known." In addition, we are advised, the state banking department requires trust funds to be deposited in a separate bank. The acts of Congress and the state laws are not alike but a difference in permitted corporate management does not establish that the federal statute is in contravention of the state law, in the light of the explicit congressional definition of those words, and the difference is further unimportant in the decision of this case, because the record shows, that petitioner has agreed to comply with the state law on the subject. The petition also contains a stipulation whereby petitioner irrevocably covenants with the court below pursuant to rule 21, that it will not remove securities or other property by it held in a fiduciary capacity out of the jurisdiction of the court and that it will deposit trust funds in a separate account with another bank or trust company.

The second point of alleged conflict the court found by comparing the part of section 11 k, (supra) authorizing examination by state examiners of the affairs of a national bank, with the state law of May 21, 1919, P. L. 209, providing in section 14 (a) for examination by state examiners; but the record shows that petitioner has stipulated both with the court and with the state banking department that the state banking department shall make like examination of all its property and assets as is made in the case of state banks. The record also shows that petitioner has filed a stipulation with the banking department to be and remain subject to supervision by that department to the same extent as state corporations pursuant to the Act of May 20, 1921, P. L.

991, entitled "Restricting the appointment of corporate fiduciaries by testators or by any court or register of wills to corporations fully subject to supervision and examination by the banking department."

The learned court below found its third conflict "in the case of insolvency or suspension of a national bank." The federal law provides that in such cases the comptroller of the currency appoint a receiver who, under the direction of the comptroller shall take possession, administer, etc., pursuant to appropriate judicial action. The practice has long prevailed and is well understood. The court remarks that such receiver will not be under the control of the state courts.   But, as to the court below, it would seem that the federal court supervising a receivership under the national banking law, is neither more nor less foreign than a state court supervising a receiver appointed by the banking commissioner administering the affairs of a state bank pursuant to state law.

It was for Congress to determine whether the details of corporate management prescribed by it were better adapted for the exercise of the plenary federal power it desired exerted, than other methods of corporate administration effective in the states, but its provisions for the conduct of business or the administration in insolvency, though different from the state system, cannot be regarded as in contravention of state law within the terms of the amendment of 1918.

The orders appealed from are reversed and the record remitted with instructions to enter an order consistent with this opinion.

PORTER, J., dissents.

GAWTHROP, J., did not hear the argument and did not participate in the decision.