## National Banks as Fiduciaries.

*Banks and banking — National banks — Fiduciaries — Capital less than*
*$125,000—Acts of Congress of Dec. 23, 1913, and Sept. 26, 1918.*

National banks having a capital of less than $125,000 are not entitled to act in a
fiduciary capacity as trustees, executors, administrators, guardians, etc., in Penn-
sylvania, either under section 11 (*k*) of the Act of Congress of Dec. 23, 1913,
ch. 6, 38 Stat. at L. 251, 262, or under said section as amended by the Act of
Sept. 26, 1918, ch. 177, § 2, 40 Stat. at L. 968.

Department of Justice.  Opinion to Hon. Peter G. Cameron, Secretary of
Banking.

WAGNER, Dep. Att'y-Gen., March 24, 1927.—I beg to acknowledge receipt
of your letter of March 16th, addressed to the Attorney-General, in which you
request that you be advised whether a national bank with a paid-up capital
of less than $125,000 has the right to engage in fiduciary business in Penn-
sylvania, provided its permit so to do was granted by the Federal Reserve
Board under section 11 *(k)* of the Federal Reserve Act as originally enacted
by the Act of Congress of Dec. 23, 1913, and prior to the amendment of said
section 11 *(k)* by the Act of Congress of Sept. 26, 1918, ch. 177, § 2, 40 Stat.
at L. 968.

Section 11 *(k)* of the Act of Congress approved Dec. 23, 1913, ch. 6, 38 Stat.
at L. 251, 262, known as the Federal Reserve Act, authorized and empowered
the Federal Reserve Board "to grant by special permit to national banks
applying therefor, when not in contravention of state or local law, the right
to act as trustee, executor, administrator or registrar of stocks and bonds
under such rules and regulations as the said board may prescribe."

This section was the subject of an opinion rendered to you by former
Deputy Attorney-General Joseph L. Kun on June 26, 1918, in which it was
held that a national bank having a paid-up capital of less than $125,000 was
not authorized to act in a fiduciary capacity in the State of Pennsylvania,
even though a permit so to do had been granted it by the Federal Reserve
Board in accordance with the provisions of the section above quoted, in view
of the fact that the section limited the right of a national bank to act to
cases "when not in contravention of state or local law," and paragraph 13,
clause 1, section 1, of the Act of May 9, 1889, P. L. 159, which amended the
29th section of the General Corporation Act of 1874, required all corporations
to have a paid-up capital of not less than $125,000 before exercising fiduciary
or trust powers within the State.  [National Banks, 27 Dist. R. 986.]

This interpretation of section 11 *(k)* of the Federal Reserve Act is in
accord with an opinion of the Attorney-General of the United States (31 Op.
Att'y-Gen. 186), rendered to the President under date of Nov. 26, 1917, in
which the Attorney-General advised the President that the Federal Reserve
Board had no authority to grant to national banks located in New York the
power to act as trustee, executor or administrator, in view of the fact that
a statute of the State of New York provided that "no corporation, other than
a trust company organized under the laws of this state, shall have or exercise
in this state" the powers and rights of trust companies and fiduciaries.

Likewise, in Woodbury's Appeal, 96 Atl. Repr. 299; 78 N. H. 50, decided
in 1915, it was held that a statute of the State of New Hampshire prohibiting
trust companies, loan and trust companies, loan and banking companies, banks
or banking companies or similar corporations from acting as administrators,
executors or guardians, was valid and effective to preclude national banks
from doing a fiduciary business in the state, even though licensed so to do by

the Federal Reserve Board. The state statute involved in this case was passed after the Federal Reserve Act, a fact which was held to be immaterial.

In First National Bank *v.* Fellows, etc., 244 U. S. 416; 61 L. Ed. 1233, which is relied upon in the opinion of the former Deputy Attorney-General of June 26, 1918, Mr. Chief Justice White held that the subject of the exercise of trust powers by the banks and banking institutions was one peculiarly within the regulation of the state, provided there was no discrimination against national banks.

Section 11 *(k)*, as quoted above, was amended by the Act of Congress approved Sept. 26, 1918, ch. 177, § 2, 40 Stat. at L. 968. The amended section reads as follows:

"*(k)* To grant by special permit to national banks applying therefor, when not in contravention of state or local law, the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which state banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the state in which the national bank is located.

"Whenever the laws of such state authorize or permit the exercise of any or all of the foregoing powers by state banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of state or local law within the meaning of this act.

"National banks exercising any or all of the powers enumerated in this subsection shall segregate all assets held in any fiduciary capacity from the general assets of the bank, and shall keep a separate set of books and records showing in proper detail all transactions engaged in under authority of this sub-section. Such books and records shall be open to inspection by the state authorities to the same extent as the books and records of corporations organized under state law which exercise fiduciary powers, but nothing in this act shall be construed as authorizing the state authorities to examine the books, records and assets of the national bank which are not held in trust under authority of this sub-section.

"No national bank shall receive in its trust department deposits of current funds subject to check, or the deposit of checks, drafts, bills of exchange, or other items for collection or exchange purposes. Funds deposited or held in trust by the bank awaiting investment shall be carried in a separate account and shall not be used by the bank in the conduct of its business, unless it shall first set aside in the trust department United States bonds or other securities approved by the Federal Reserve Board.

"In the event of the failure of such bank, the owners of the funds held in trust for investment shall have a lien on the bonds or other securities so set apart, in addition to their claims against the estate of the bank.

"Whenever the laws of a state require corporations acting in a fiduciary capacity to deposit securities with the state authorities for the protection of private or court trusts, national banks so acting shall be required to make similar deposits, and securities so deposited shall be held for the protection of private or court trusts, as provided by the state law.

"National banks, in such cases, shall not be required to execute the bond usually required of individuals, if state corporations under similar circumstances are exempt from this requirement.

"National banks shall have power to execute such bond when so required by the laws of the state.

### National Banks as Fiduciaries.

"In any case in which the laws of a state require that a corporation acting as trustee, executor, administrator, or in any capacity specified in this section, shall take an oath or make an affidavit, the president, vice-president, cashier or trust officer of such national bank may take the necessary oath or execute the necessary affidavit.

"It shall be unlawful for any national banking association to lend any officer, director or employee any funds held in trust under the powers conferred by this section. Any officer, director or employee making such loan, or to whom such loan is made, may be fined not more than $5000 or imprisoned not more than five years, or may be both fined and imprisoned, in the discretion of the court.

"In passing upon applications for permission to exercise the powers enumerated in this sub-section, the Federal Reserve Board may take into consideration the amount of capital and surplus of the applying bank, whether or not such capital and surplus is sufficient under the circumstances of the case, the needs of the community to be served, and any other facts and circumstances that seem to it proper, and may grant or refuse the application accordingly: Provided, that no permit shall be issued to any national banking association having a capital and surplus less than the capital and surplus required by state law of state banks, trust companies and corporations exercising such powers."

The present question arises by reason of the proviso in the last paragraph of the above amendment to the effect that no permit shall be issued to a national bank having a capital and surplus less than the capital and surplus required by state law of state institutions exercising fiduciary powers. It is argued that the inclusion of this prohibition in the amendment indicates that, prior to the passage of the amendment, the prohibition was not effective.

It is my opinion that this position is untenable. A proper reading of the amendment indicates that its purpose was to explain and amplify the provisions of section 11 (k) of the original act, and in some cases to extend the powers conferred upon national banks and the Federal Reserve Board by the original section. This is confirmed by the decisions rendered after the passage of the amendment.

In Missouri ex rel. Burnes National Bank v. Duncan, 265 U. S. 17; 68 L. Ed. 881, was involved the question whether a national bank was entitled to act as executor in the State of Missouri in the face of the state statute prohibiting a national bank from so acting. Mr. Justice Holmes, in delivering the opinion of the court holding that a national bank was entitled to act under such circumstances, said, after quoting the first paragraph of the amendment, which is in substance the same as the original section, that if the section stopped there, the decision of the state court prohibiting a national bank from acting might be final, but that the subsequent paragraphs of the amendment indicated that a national bank should have larger powers. It is evident from this opinion that the purpose of the amendment was to enable national banks to compete on equal terms with state institutions in doing a trust business.

In numerous other cases decided in the various state courts it has been held that the purpose of the amendment was to amplify and make more certain the provisions of section 11 (k) of the original act and to enlarge the powers of national banks in doing a fiduciary business. See Turner's Estate, 80 Pa. Superior Ct. 88, affirmed in 277 Pa. 110, decided in 1923; Re Stanchfield, 171 Wis. 553; 178 N. W. Repr. 310, decided in 1920; and Re Mollineaux, 179 N. Y. Supp. 90, decided in 1919. A consideration of the Amendment of Sept. 26, 1918, in the light of these cases, indicates that the inclusion of the proviso

that no permit shall be issued to a national bank having a capital and surplus less than the capital and surplus required for a state institution exercising the same powers was not to set up a prohibition which did not exist prior to the passage of the amendment, but, instead, a prohibition upon the authority given to the Federal Reserve Board by the amendment in passing upon applications for permits to take into consideration the amount of capital and surplus of the applying bank under the circumstances of the particular case under consideration.

I am of the opinion, therefore, that national banks having a capital of less than $125,000 are not entitled to conduct a fiduciary business in the State of Pennsylvania, either under section 11 *(k)* of the Act of Congress of Dec. 23, 1913, or under said section as amended by the Act of Sept. 26, 1918, and you are advised to continue to enforce the requirement of a paid-up capital of $125,000 as a prerequisite to the engaging in fiduciary business of national banks in this State, regardless of the date upon which permits to engage in such business were issued to such banks by the Federal Reserve Board.

From C. P. Addams, Harrisburg, Pa.