

# THE ATTORNEY GENERAL OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
ATTORNEY GENERAL

Honorable Charles H. Theobald
County Attorney
Galveston County
Galveston, Texas

Dear Mr. Theobald:

Opinion No. O-5929
Re: Construction of Articles 4982, 4986, 4201 and 4216, V.A.C.S.

Your request for an opinion upon the above subject matter presents the following questions:

"Question 1. Are these statutes (Articles 4982 and 4984) applicable to a National Bank?

"Question 2. If the Probate Court has entered an order requiring a bond in a definite amount, and at a subsequent date a bank complies with Articles 4982 and 4983, does such compliance supersede said previous order made requiring bond, and permit said bank to function as administrator or guardian without filing the bond previously ordered?

"Articles 4201 and 4216 Vernon's Annotated Civil Statutes provide that in order for a guardian or administrator to sell real estate he must file a special sale bond in double the amount for which the sale is being made.

"Question 3. Do these statutes relieve those complying therewith from filing such special sale bond in the transfer of real estate?

"Question 4. Where a bank has for a number of years been duly acting as administrator or guardian under bonds fixed by the Court, and after having acted as such an administrator or guardian for a number of years complies with the statutes herein mentioned, can it be required to give any further bonds or do these statutes relieve such bank of the necessity of filing any further bonds in said estate in which they have previously qualified and have been acting?"

We shall answer your questions categorically in the order of your enumeration.

1. Articles 4982, 4983, 4984, 4985, and 4986, constituting Subdivision 2. TRUST COMPANIES, under Chapter Sixteen of Title 78 of the Revised Civil Statutes, Vernon's codification, dealing with surety and trust companies, are as follows:

(Note: Copying these statutes is omitted here for brevity as they are available in Vernon's codification.)

Under well-established rules of law, national bankkng associations derive their corporate powers from Congress, and no State law which thwarts or impairs the exercise of such corporate powers can be valid. Such nationθ al associations may therefore lawfully exercise any of their authorized corporate functions when not in contravention of our state or local laws. Such is the doctrine of First National Bank of Bay City v. Fellows, 244 U.S. 416, discussed and applied in Opinion No. 2541 by this department, under date of January 11, 1924. (Opinions Attorney General, 1922-1924, p. 306).

Our statutes from the earliest Act have authorized the incorporation of banking institutions with the fiduciary powers under consideration. (S. B. No. 6, ch. 10, General Laws of Texas, 1905, 1st C.S. pp. 489-520, Vernon's Civ. Stat., 1925, as amended, Art. 396). The Legislature has never attempted, of course, to prohibit the like exercise of such fiduciary powers by national associations. On the contrary the latest expression of the legislative will upon that subject is contained in Article 8 of Chapter IX of the Texas Banking Code of 1943, which declares:

"It is not the intention of the Legislature in the enactment of this Code to discriminate between state banks and national banks and, to the extent that the State of Texas has power to legislate with reference to national banks, each provision of the Code shall apply alike to State banks and national banks domiciled in this State."

Under the Code of 1943 (Art. 1, ch. III) banks may be organized with power "to act under the order or appointment of any court of record as guardian, receiver, trustee, executor or administrator, and althouth without general depository powers, to act as depository for any moneys paid into courts."

Upon these considerations, national banks, although not mentioned in Article 4982, nevertheless have precisely the same privileges and rights as are there afforded to state banking institutions, and your question No. 1 is therefore thus answered.

2. This question involves a consideration of the effect of our statutes authorizing State banking institutions to act as fiduciaries under appointment of the proper court, that is to say, whether or not such appointee bank, in virtue of such corporate power, is authorized to exercise it without giving the bond or bonds required by law in the general statutes governing the appointment and qualification of such fiduciaries.

If a bank appointed by the court to act as a fiduciary by reason of its corporate power thus to act is absolved from the requirement of bond, the appointing court would have no authority to require a bond, and thus to deny the statutory power of the bank to act without such bond. If, under the statute of powers, such bank is not tiven immunity from the ordinary requirement of bond, then, of course, upon compliance with Articles 4982 and 4983 by such bank it acquires the express right to function as administrator or guardian "without giving bonds as such."

It is a cardinal rule of statutory construction that all acts, articles, and parts of acts or articles in pari materia should be read and construed together so as to arrive at the intention of the Legislature upon the particular subject of inquiry.

Now, the various statutes regulating the fiduciaries under consideration uniformly require and prescribe fidelity bonds of them. The banking statutes with respect to powers -- as fiduciaries -- do not expressly exempt eligible banks from the requirement of such bonds. They are easily construed to confer the power to be such fiduciary under appointment by a court of competent jurisdiction, under the statutory requirement as to qualification to exercise such powers, that is, the power to do. They deal with eligibility -- rather than qualification.

The immediate question under consideration has never been before the courts of this State for consideration insofar as we have been able to discover. Neither has there been any decision by other courts so far as our search reveals. This department rendered an opinion to the Commissioner of Banking, under date of January 11, 1924, construing Article 540, Revised Civil Statutes of 1911, which corresponds to Article 4982 of the present statutes, advising "that the Commissioner of Banking and the State Treasurer of Teaas should do and perform such duties as are prescribed in Article 540 for and on behalf of national banking associations desiring to comply therewith." (Opinions Attorney General, 1922-1924, p. 309). The relevancy of this opinion will be apparent from the statement we shall make in the next succeeding paragraph.

We have made inquiry of the State Treasurer and are advised by him that no person or corporation has ever at any time made directly to that office a deposit of $50,000.00 under Article 4983, although there have been and now exists deposits by banking institutions coming through the Insurance Department that possibly were required by that department under this Article, but whether so or not, we do not of course know.

Now, a national bank would have no purpose to serve in making a deposit of $50,000.00 for the privilege of acting as a fiduciary if it had that power and privilege by reason of its existing corporate power to act as such fiduciary without bond. So that, we are of the opinion your second question should be answered in the affirmative, that is, that where a state bank or a national association complies with the deposit requirements of Articles 4982 and 4983, it has met the full requirements of law, and may function in such fiduciary capacity without a bond. This was ruled in the opinion of this department in 1924 already referred to herein.

3. Articles 4201 and 4216, Vernon's Annotated Civil Statutes, as amended by the Acts of the 48th Legislature, are as follows:

(Note: Please see Vernon's for a recitation of these statutes, omitted here for brevity in this opinion).

This department held in Opinion No. 0-5674, addressed to Honorable L. C. Boswell, County Attorney, Bowie County, Texarkana, Texas, that under House Bill 482, amending Articles 4201 and 4216 of the statutes as above quoted (cited), "It is necessary for the guardian to file a special sale bond in double the amount for which the real estate is sold. In other words, a special sale bond must be filed in compliance with said House Bill 482, regardless of the amount of the general bond filed when real estate is sold by the guardian." It is true that no question was involved in that case specially of the applicability of House Bill 482 to a sale by a bank acting as guardian, but it is also true that no exception or qualification of the rule was announced by us.

Moreover, it has been held that this statute is mandatory, as it is in terms (Simpson v. Booth, 163 S.W. (2) 1080, writ refused) in broad language, with no qualification or exception.

In Child v. Ogden State Bank (Utah) 20 Pac. (2) p. 607, it is said:

"Until 1921, commercial and savings banks had not been authorized to execute trusts or to act in the capacities enumerated in Laws Utah 1921, § 981x, c.24, p. 87. It reads: 'Commercial banks, having a paid up capital and surplus of not less than $100,000.00 upon the issuance to the particular bank of a permit by the bank commission, shall have authority and power: To act as assignees, agents, receivers, guardians of the estates of minors, and incompetent persons, executors and administrators, registrars of stocks and bonds, and to execute trusts of every description not inconsistent with law.'

"Nor had they been restricted as to private trusts, agencies, or other matters not related to court appointments. At the same time there was also passed Laws Utak 1921, § 981x1, c. 24, p. 87: 'Whenever any such bank shall accept an appointment as assignee, agent, receiver, guardian, executor or administrator, or be directed to execute any trust, the capital of the said bank shall be held as security for the faithful performance of such duties, and be held liable for any default whatever, and no bond shall be required of it for the faithful performance of such trust.'

"By these provisions commercial and savings banks enter a field formerly held by loan, trust, and guaranty associations. The law at present does not require commercial and savings banks to keep their capital in money on deposit, or in bonds or securities as specified for loan, trust, and guaranty associations. Necessary liquidity makes it impractical for such banks to withdraw their capital from business in which they are engaged. It appears, however, that the law in express terms declares that such capital shall be held as security for the faithful performance of the trusts to which they are appointed and by them accepted, and in such fiduciary capacities as they accept and agree to act. These capacities are evidently intended to be related to matters over which the court has jurisdiction. The law relating to guardians, receiverships, and when it becomes necessary to appoint a trustee, except private turstee by agreement, the proceedings in relationg thereto, are all subject to the jurisdiction and control of the court, and fiduciaries in

such cases must be appointed by the courts. Bonds, except when such corporations as have qualified under the statute are appointed, are required to be furnished. There seems to be no provision of law preventing commercial and savings banks from acting as trustees, or in other fiduciary capacities, if the articles of incorporation so provide, upon furnishing satisfactory bond. But if they desire to serve in such capacities without bond, they must qualify as by the statute provided. . . ."

It is true in that case the court had before it for decision only the matter of a private trust, nevertheless, the language above quoted constitutes a very persuasive argument by a most respectable authority applicable to the question of construction before us.

We are not concerned with the wisdom of this statutory requirement for a sale bond, nor are we concerned the fact that the Legislature has not prescribed similarly for a sale bond of real estate belonging to the estate of a decedent. The fact remains the Legislature has specifically made the requirement in case of sales by the guardian of land, and we see no reason to doubt the validity of the act -- it is merely a matter of construction with us.

Upon mature consideration, it is the opinion of this department that these statutes do not require the execution of a sale bond under the circumstances stated by you, regardless of whether or not the bank had actually executed a bond, and regardless of the fact whether or not a bank had made the required deposit, under the terms of Article 4983.

4. What we have already said constitutes sufficient answer to your fourth question.

Trusting that what we have said satisfactorily solves your problems, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

APPROVED MAR 25, 1944
/s/ Geo. P. Blackburn
(Acting) ATTORNEY GENERAL OF TEXAS

OS-MR:egw

APPROVED: Opinion Committee
          By A.W., Chairman