FIRST NATIONAL BANK OF BAY CITY *v.* FELLOWS, ATTORNEY GENERAL OF THE STATE OF MICHIGAN, ON THE RELATION OF UNION TRUST COMPANY ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 764. Argued March 22, 23, 1917.—Decided June 11, 1917.

By the principles fully settled in *McCulloch* v. *Maryland* and *Osborn* v. *Bank*, and other cases, the implied power of Congress to confer a particular function upon a national bank is to be tested, not by the nature of the function viewed by itself, but by its relations to all

the functions and attributes of the bank considered as an entity; the necessity or appropriateness of the function should be considered with reference to the situation to which it relates; and, as to what is necessary or appropriate, a court should not substitute its judgment for the judgment of Congress.

As settled also by those cases, the circumstance that a function is of a class subject to state regulation does not prevent Congress from authorizing a national bank to exercise it; nor would it lie with the state power to forbid this.

A business not inherently such that Congress may empower national banks to engage in it may nevertheless become appropriate to their functions if, by state law, state banking corporations, trust companies, or other rivals of national banks are permitted to carry it on.

Section 11 (k) of the Act of December 23, 1913, establishing the Federal Reserve Board, in authorizing the board "To grant by special permit to national banks applying therefor, when not in contravention of state or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds under such rules and regulations as the said board may prescribe," is, as here construed, a valid exercise of the power of Congress.

The section authorizes the specified functions to be exercised by national banks when the right to perform them is given by state law, or is deducible therefrom through being so conferred on state banks or corporations whose business in some degree rivals that of national banks; and it gives administrative power to the Reserve Board as a means of coördinating such functions, in their exercise by national banks, with the reasonable and nondiscriminating provisions of state law regulating their exercise as to state corporations.

The section is not open to the objection that it confers legislative power on the Reserve Board.

In providing that the specified functions may be exercised "when not in contravention of state or local law," Congress impliedly, if not expressly, authorized the institution and conduct in the state supreme court of proceedings in the nature of *quo warranto* to test whether the exercise of such functions by a national bank is consistent with the state law.

192 Michigan, 640, reversed.

THE case involves the validity of provisions in the Federal Reserve Bank Act authorizing national banks to act as trustees, etc., when allowed by the Reserve Board and not in contravention of state law; also the jurisdiction of

the state court to determine the authority of such banks in proceedings akin to *quo warranto*. The case is stated in the opinion.

Mr. *W. C. Elliott* and Mr. *Edward S. Clark*, with whom Mr. *H. M. Gillett* was on the briefs, for plaintiff in error.

Mr. *Henry M. Campbell* and Mr. *John G. Johnson* for defendants in error.

*The Solicitor General*, with whom Mr. *Joseph P. Cotton* and Mr. *Milton C. Elliott* were on the brief, for the United States, by leave of court.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

We are of opinion that the procedure resorted to was appropriate and that the state court was competent to administer relief, but we postpone stating our reasons on the subject until the merits have been passed upon.

The court below held that an act of Congress conferring on national banks additional powers was in excess of the authority of Congress and was hence repugnant to the Constitution. 192 Michigan, 640. The correctness of this conclusion is in substance the sole question for decision on the merits.

Although the powers given were new, the principles involved in the right to confer them were long since considered and defined in adjudged cases. We shall first consider the leading of such cases and then, after stating this case, determine whether they are controlling, causing the subject not to be open for original consideration.

In *McCulloch* v. *Maryland*, 4 Wheat. 316, the bank had been incorporated by Congress with powers to transact business of both a governmental and of a private character. The question which was decided was the authority of Congress to grant such charter. Without undertaking

to restate the opinion of Mr. Chief Justice Marshall, it suffices for the purpose of the matter now before us to say that it was held that although Congress was not expressly given the power to confer the charter, authority to do so was to be implied as appropriate to carry out the powers expressly given. In reaching this conclusion it was further decided that to recognize the existence of the implied power was not at all in conflict with Article I, §8, clause 18, of the Constitution, providing that Congress should have power "To make all laws which shall be necessary and proper for carrying into execution the foregoing powers," since that provision did not confine the implied authority to things which were indispensably necessary, but on the contrary gave legislative power to adopt every appropriate means to give effect to the powers expressly given. In terms it was pointed out that this broad authority was not stereotyped as of any particular time but endured, thus furnishing a perpetual and living sanction to the legislative authority within the limits of a just discretion enabling it to take into consideration the changing wants and demands of society and to adopt provisions appropriate to meet every situation which it was deemed required to be provided for. In fact the rulings which we have stated were all summed up in the following passage which ever since has been one of the principal tests by which to determine the scope of the implied power of Congress over subjects committed to its legislative authority:

"We admit, as all must admit, that the powers of the government are limited, and that its limits are not to be transcended. But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the

end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adpated to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." p. 421.

In *Osborn* v. *Bank*, 9 Wheat. 738, where substantially the subject was presented in the same form in which it had been passed upon in *McCulloch* v. *Maryland*, yielding to the request of counsel, the whole subject was reëxamined and the previous doctrines restated and upheld. Considering more fully, however, the question of the possession by the corporation of private powers associated with its public authority and meeting the contention that the two were separable and the one, the public power, should be treated as within and the other, the private, as without the implied power of Congress, it was expressly held that the authority of Congress was to be ascertained by considering the bank as an entity possessing the rights and powers conferred upon it and that the lawful power to create the bank and give it the attributes which were deemed essential could not be rendered unavailing by detaching particular powers and considering them isolatedly and thus destroy the efficacy of the bank as a national instrument. The ruling in effect was that although a particular character of business might not be when isolatedly considered within the implied power of Congress, if such business was appropriate or relevant to the banking business the implied power was to be tested by the right to create the bank and the authority to attach to it that which was relevant in the judgment of Congress to make the business of the bank successful. It was said: "Congress was of opinion, that these faculties were necessary, to enable the bank to perform the services which are exacted from it, and for which it was created. This was certainly a question proper for the consideration of the national legislature." p. 864.

As the doctrines thus announced have been reiterated in a multitude of judicial decisions and have been undeviatingly applied in legislative, and enforced in administrative action, we come at once to state the case before us to see whether such doctrines dispose without more as a mere question of authority of the subject under consideration.

Section 11 (k) of the Act of Congress approved December 23, 1913, establishing the Federal Reserve Board (38 Stat. 251, 262, c. 6), gives to that board authority "To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds under such rules and regulations as the said board may prescribe."

The First National Bank of Bay City having obtained the certificate required began the exercise of the powers stated. Thereupon certain trust companies which under the laws of Michigan had the authority to do the same character of business petitioned the Attorney General of the State to test the right of the national bank to use the functions on the ground that its doing so was contrary to the laws of the State of Michigan and that the action of the Federal Reserve Board purporting to give authority was in contravention of the Constitution of the United States. The Attorney General then, on the relation of the trust companies, commenced in the Supreme Court of the State a proceeding in the nature of *quo warranto* to test the right of the corporation to exercise the functions. The bank in defense fully stated its federal charter, the rights given by the act of Congress and the action of the Federal Reserve Board taken thereunder. The Attorney General demurred to this defence, first, because Congress had no power to confer the authority which was called in question; second, because if it had the power, it was without right to delegate to the Reserve Board the deter-

mination of when it should be used; and third, because
the exercise of the powers was in contravention of the
laws and authority of the State and the Reserve Board
therefore under the act had no power to grant the certif-
icate.

The case was heard by the full court. In an opinion of
one judge which, it would seem, was written before the
opinion of the court was prepared, it was elaborately
reasoned that the exercise by a national bank of the func-
tions enumerated in the section of the act of Congress
under consideration would be contrary to the laws of the
State and therefore the Reserve Board under the terms of
the act of Congress had no power to authorize their exer-
tion. The opinion of the court, however, fully examining
the grounds thus stated and disagreeing with them, ex-
pressly decided that corporations were authorized by the
state law to perform the functions in question and that
the mere fact that national banks were federal corporations
did not render them unfit to assume and perform such
duties under the state law because the mere difference
existing between the general administrative rules govern-
ing national banks and state corporations afforded no
ground for saying that it would be contrary to state law
for national banks to exert the powers under consideration.
The authority conferred by the act of Congress and the
rights arising from the certificate from such point of view
were therefore upheld. Looking at the subject, however,
from a consideration of the legislative power of Congress
in the light of the decisions in *McCulloch* v. *Maryland*
and *Osborn* v. *Bank* and recognizing that it had been settled
beyond dispute that Congress had power to organize
banks and endow them with functions both of a public
and private character, and in the assumed further light
of the rule that every reasonable intendment must be
indulged in in favor of the constitutionality of a legislative
power exercised, it was yet decided that Congress had no

authority to confer the powers embraced in the section of the act under consideration and hence that the section was void. The court following its reference to *McCulloch* v. *Maryland* and *Osborn* v. *Bank* and to passages in the opinions in those cases upholding the rightful possession by the bank of both public functions and private banking attributes, stated the grounds which led it to conclude that the rulings in the decided cases were distinguishable and therefore not controlling. It said:

"But in the reasoning of the judges, in the opinions to which I have referred, I find, I think, a conclusive argument supporting the proposition that congress has exceeded its constitutional powers in granting to banks the right to act as trustees, executors and administrators. If for mere profit it can clothe this agency with the powers enumerated, it can give it the rights of a trading corporation, or a transportation company, or both. There is, as Judge Marshall points out, a natural connection between the business of banking and the carrying on of federal fiscal operations. There is none, apparently, between such operations and the business of settling estates, or acting as the trustee of bondholders. This being so, there is in the legislation a direct invasion of the sovereignty of the State which controls not only the devolution of estates of deceased persons and the conducting of private business within the State, but as well the creation of corporations and the qualifications and duties of such as may engage in the business of acting as trustees, executors and administrators. Such an invasion I think the court may declare and may prevent by its order operating upon the offending agency."

But we are of opinion that the doctrine thus announced not only was wholly inadequate to distinguish the case before us from the rulings in *McCulloch* v. *Maryland* and *Osborn* v. *Bank,* but on the contrary directly conflicted with what was decided in those cases, that is to say, dis-

regarded their authority so as to cause it to be our duty to reverse for the following reasons:

1. Because the opinion of the court instead of testing the existence of the implied power to grant the particular functions in question by considering the bank as created by Congress as an entity with all the functions and attributes conferred upon it, rested the determination as to such power upon a separation of the particular functions from the other attributes and functions of the bank and ascertained the existence of the implied authority to confer them by considering them as segregated, that is, by disregarding their relation to the bank as component parts of its operations,—a doctrine which, as we have seen, was in the most express terms held to be unsound in both of the cases.

2. Because while in the premise to the reasoning the right of Congress was fully recognized to exercise its legislative judgment as to the necessity for creating the bank including the scope and character of the public and private powers which should be given to it, in application the discretion of Congress was disregarded or set aside by exercising judicial discretion for the purpose of determining whether it was relevant or appropriate to give the bank the particular functions in question.

3. Because even under this mistaken view the conclusion that there was no ground for implying the power in Congress was erroneous because it was based on a mistaken standard, since for the purpose of testing how far the functions in question which were conferred by the act of Congress on the bank were relevant to its business or had any relation to discrimination by state legislation against banks created by Congress it considered not the actual situation, that is, the condition of the state legislation, but an imaginary or non-existing condition, that is, the assumption that so far as the state power was concerned the particular functions were in the State enjoyed

only by individuals or corporations not coming at all, actually or potentially, in competition with national banks. And the far-reaching effect of this error becomes manifest when it is borne in mind that plainly the particular functions enumerated in the statute were conferred upon national banks because of the fact that they were enjoyed as the result of state legislation by state corporations, rivals in a greater or less degree of national banks.

4. In view of the express ruling that the enjoyment of the powers in question by the national bank would not be in contravention of the state law, it follows that the reference of the court below to the state authority over the particular subjects which the statute deals with must have proceeded upon the erroneous assumption that because a particular function was subject to be regulated by the state law, therefore Congress was without power to give a national bank the right to carry on such functions. But if this be what the statement signifies, the conflict between it and the rule settled in *McCulloch* v. *Maryland* and *Osborn* v. *Bank,* is manifest. What those cases established was that although a business was of a private nature and subject to state regulation, if it was of such a character as to cause it to be incidental to the successful discharge by a bank chartered by Congress of its public functions, it was competent for Congress to give the bank the power to exercise such private business in coöperation with or as part of its public authority. Manifestly this excluded the power of the State in such case, although it might possess in a general sense authority to regulate such business, to use that authority to prohibit such business from being united by Congress with the banking function, since to do so would be but the exertion of state authority to prohibit Congress from exerting a power which under the Constitution it had a right to exercise. From this it must also follow that even although a business be of such a character that it is not inherently considered susceptible of

being included by Congress in the powers conferred on national banks, that rule would cease to apply if by state law state banking corporations, trust companies, or others which by reason of their business are rivals or *quasi*-rivals of national banks are permitted to carry on such business. This must be since the State may not by legislation create a condition as to a particular business which would bring about actual or potential competition with the business of national banks and at the same time deny the power of Congress to meet such created condition by legislation appropriate to avoid the injury which otherwise would be suffered by the national agency. Of course as the general subject of regulating the character of business just referred to is peculiarly within state administrative control, state regulations for the conduct of such business, if not discriminatory or so unreasonable as to justify the conclusion that they necessarily would so operate, would be controlling upon banks chartered by Congress when they came in virtue of authority conferred upon them by Congress to exert such particular powers. And these considerations clearly were in the legislative mind when it enacted the statute in question. This result would seem to be plain when it is observed (a) that the statute authorizes the exertion of the particular functions by national banks when not in contravention of the state law, that is, where the right to perform them is expressly given by the state law or what is equivalent is deducible from the state law because that law has given the functions to state banks or corporations whose business in a greater or less degree rivals that of national banks, thus engendering from the state law itself an implication of authority in Congress to do as to national banks that which the state law has done as to other corporations; and (b) that the statute subjects the right to exert the particular functions which it confers on national banks to the administrative authority of the Reserve Board, giving besides to that Board power to

adopt rules regulating the exercise of the functions conferred, thus affording the means of coördinating the functions when permitted to be discharged by national banks with the reasonable and non-discriminating provisions of state law regulating their exercise as to state corporations, —the whole to the end that harmony and the concordant exercise of the national and state power might result.

Before passing to the question of procedure we think it necessary to do no more than say that a contention which was pressed in argument and which it may be was indirectly referred to in the opinion of the court below that the authority given by the section to the Reserve Board was void because conferring legislative power on that board, is so plainly adversely disposed of by many previous adjudications as to cause it to be necessary only to refer to them. *Field* v. *Clark*, 143 U. S. 649; *Buttfield* v. *Stranahan*, 192 U. S. 470; *United States* v. *Grimaud*, 220 U. S. 506; *Monongahela Bridge Company* v. *United States*, 216 U. S. 177; *Intermountain Rate Cases*, 234 U. S. 476.

The question of the competency of the procedure and the right to administer the remedy sought, then remains. It involves a challenge of the right of the State Attorney General to resort in a state court to proceedings in the nature of *quo warranto* to test the power of the corporation to exert the particular functions given by the act of Congress because they were inherently federal in character, enjoyed by a federal corporation and susceptible only of being directly tested in a federal court. Support for the challenge in argument is rested upon *Ableman* v. *Booth*, 21 How. 506; *Tarble's Case*, 13 Wall. 397; *Van Reed* v. *People's National Bank*, 198 U. S. 554, 557; *State ex rel. Wilcox* v. *Curtis*, 35 Connecticut, 374. But without inquiring into the merits of the doctrine upon which the proposition rests we think when the contention is tested by a consideration of the subject-matter of this particular controversy it cannot be sustained. In other words, we

are of opinion that as the particular functions in question by the express terms of the act of Congress were given only "when not in contravention of State or local law," the state court was, if not expressly, at least impliedly authorized by Congress to consider and pass upon the question whether the particular power was or was not in contravention of the state law, and we place our conclusion on that ground. We find no ambiguity in the text, but if it be that ambiguity is latent in the provision, a consideration of its purpose would dispel doubt especially in view of the interpretation which we have given the statute and the contrast between the clause governing the subject by the state law and the provision conferring administrative power on the Reserve Board. The nature of the subject dealt with adds cogency to this view since that subject involves the action of state courts of probate in a universal sense, implying from its very nature the duty of such courts to pass upon the question and the power of the court below within the limits of state jurisdiction to settle so far as the State was concerned the question for all such courts by one suit, thus avoiding the confusion which might arise in the entire system of state probate proceedings and the very serious injury to many classes of society which also might be occasioned. And our conclusion on this subject is fortified by the terms of § 57, c. 106, 13 Stat. 116, making controversies concerning national banks cognizable in state courts because of their intimate relation to many state laws and regulations, although without the grant of the act of Congress such controversies would have been federal in character.

As it follows from what we have said that the court below erred in declaring the section of the act of Congress to be unconstitutional, the judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*And it is so ordered.*

MR. JUSTICE VAN DEVANTER, dissenting.

I dissent from the conclusion that this proceeding could be brought and maintained in the state court. It is an information in the nature of a *quo warranto* against a federal corporation, a national bank. It calls in question the bank's right to exercise a privilege claimed under an act of Congress, the privilege, under the terms of the act, being conferred only when "not in contravention of State or local law." The information was brought by the Attorney General of the State in his own name, and charges that the bank's exercise of the privilege is "in contempt of the people of the State," by which it is meant, as the record discloses, first, that the exercise of the privilege by the bank is in contravention of the law of the State, and, second, that the act of Congress under which the privilege is claimed transcends the power of Congress and is void. The state court dealt with both grounds. The first was overruled and the second sustained. The judgment rendered enjoins and excludes the bank from exercising the privilege.

The writt of *quo warranto* was a prerogative writ and the modern proceeding by information is not different in that respect. When it is brought to exclude the exercise of a franchise, privilege or power claimed under the United States it can only be brought in the name of the United States and by its representative, or in such other mode as it may have sanctioned. *Wallace* v. *Anderson*, 5 Wheat. 291; *Territory* v. *Lockwood*, 3 Wall. 236; *Newman* v. *Frizzell*, 238 U. S. 537. As is said in the *Lockwood Case*, "the right to institute such proceedings is inherently in the Government of the nation." This is particularly true of national banks, for they not only derive all their powers from the United States, but are instrumentalities created by it for a public purpose, and "are not to be interfered with by state legislative or judicial action, except so far

as the law making power of the Government may permit."
*Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 283; *Van
Reed* v. *People's National Bank*, 198 U. S. 554, 557. In-
deed, they are upon much the same plane as are officers
of the United States, because their conduct can only be
controlled by the power that created them. *McClung* v.
*Silliman*, 6 Wheat. 598, 605. If it were otherwise the
supremacy of the United States and of its Constitution and
laws would be seriously imperiled. *Ableman* v. *Booth*, 21
How. 506; *Tarble's Case*, 13 Wall. 397; *Tennessee* v.
*Davis*, 100 U. S. 257; *State ex rel. Wilcox* v. *Curtis*, 35
Conn. 374.

Thus much, as I understand it, is conceded in this court's
opinion, the conclusion that the state court could entertain
the information and proceed to judgment thereon, as was
done, being rested upon an implied authorization by
Congress. This authorization is thought to be found in
the provision stating that the privilege claimed is given
only "when not in contravention of State or local law"
and in the provision in the Act of June 3, 1864, c. 106,
§ 57, 13 Stat. 116, now in Rev. Stats., § 5198, which makes
suits against national banks cognizable in certain state
courts. I do not find any such authorization in either
provision.

The first does no more than to withhold the privilege in
question from national banks located in States whose laws
are opposed to or not in harmony with the possession and
exercise of such a privilege on the part of the banks. It
says nothing about judicial proceedings—nothing about
who shall bring them or where they shall be brought.
There is in it no suggestion that *quo warranto* proceedings
were in the mind of Congress. Had there been a purpose
to do anything so unusual as to authorize a state officer to
institute and conduct such a proceeding in a state court
against a federal corporation, is it not reasonable to believe
that Congress would have given expression to that pur-

pose? As before indicated, it said nothing upon the point,—just as it would have done had no such purpose been in mind. But if the words "when not in contravention of State or local law" could be regarded as giving any warrant for a *quo warranto* proceeding by a state officer in a state court, I should say they would do no more than to permit such a proceeding to determine whether the privilege was in contravention of the state law. There is nothing in them which points even remotely to a purpose to sanction a proceeding to determine the power of Congress under the Constitution to clothe a national bank with the privilege indicated. That would be without any precedent in the legislation relating to federal corporations, and I submit that it is most improbable that Congress either did or would entertain such a purpose.

The provision cited from the Act of 1864 has been in the statutes for fifty-three years and no one seems ever to have thought until now that it was intended to authorize a proceeding such as this against a national bank. I think its words do not fairly lend themselves to that purpose. They have hitherto been regarded, and in practice treated, as referring to ordinary suits such as may be conveniently prosecuted against a bank in its home town and county. Besides, the terms of the provision show that it can have no application here. After providing for suing a national bank in the federal or territorial court of the district in which it is established, the provision adds, "or in any state, county, or municipal court in the county or city in which said association is located." This bank, as the record discloses, is located in Bay City, Bay County. The proceeding was begun and had in the Supreme Court of the State at the capital, which is Lansing, Ingham County. Therefore the provision can give no support to the proceeding.

For these reasons I think the judgment should be re-

versed with a direction to dismiss the information for want of jurisdiction.

MR. JUSTICE DAY authorizes me to say that he concurs in this dissent.