**Leander H. PEREZ, Jr., Plaintiff,**

v.

**Bruce RHIDDLEHOOVER, Billy Travis and Roy Lyons, Defendants.**

**Civ. A. No. 15914–B.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 19, 1965.

Leander H. Perez, Sr., L. H. Perez & Sons, New Orleans, La., for plaintiff.

John Doar, Asst. Atty. Gen., Department of Justice, Louis M. Kauder, Department of Justice, for defendants Bruce Rhiddlehoover and Billy Travis.

FRANK B. ELLIS, District Judge.

On August 31, 1965, this suit was filed by plaintiff, the District Attorney of Plaquemines Parish, in the Twenty-Fifth Judicial District Court of Louisiana, against Bruce Rhiddlehoover and Billy Travis, federal voting examiners appointed to serve in Plaquemines Parish pursuant to Section 6 of the Voting Rights Act of 1965 [1] (hereinafter some-

1. Examiners may be appointed by a court under the provisions of § 3(a); the examiners for Plaquemines Parish, as well as all others thus far appointed, were appointed pursuant to § 6(b), whereby, upon the certification by the Attorney General that he has received twenty or more meritorious complaints of denial of

times referred to as "the Act"), and against Roy Lyons, Registrar of Voters for Plaquemines Parish. The state court immediately issued an *ex parte* temporary restraining order prohibiting the defendants from registering persons who plaintiff alleged did not meet certain requirements of state law. Later that day, upon being served with the complaint and restraining order, the federal examiners ceased operations. Although the state court order did not bar all registration, the examiners could not comply with both the conditions of the order and the instructions issued them by the Civil Service Commission.

The following day the defendant examiners removed the action against them to this Court, and simultaneously filed a motion to dissolve the temporary restraining order. Plaintiff then promptly filed a motion to remand; defendants filed a motion to dismiss. At a hearing September 3, 1965, this Court dissolved the temporary restraining order for failure of plaintiff to show the necessary "immediate and irreparable injury, loss, or damage" required by Rule 65(b), F.R.

Civ.P., 28 U.S.C.A., and scheduled the motions to remand and to dismiss for hearing on September 9, 1965. The motions were argued and taken under advisement at that hearing.

This controversy concerns the interpretation to be given the Louisiana voting laws but does not involve a challenge of the constitutionality of the Voting Rights Act. The Act prohibits the use of "tests or devices" [2] to determine voter qualifications in Louisiana and other states [3], but provides that where federal examiners are appointed the examiners shall list as eligible voters persons who have the qualifications prescribed by state law not inconsistent with the Constitution and laws of the United States.[4] The Civil Service Commission, after consultation with the Attorney General, is to instruct the examiners concerning applicable state law,[5] and determine the form for application for registration.[6] Plaintiff questions the Attorney General's conception of applicable Louisiana voter qualification laws, especially those relating to age and residence requirements.[7]

the right to vote on account of race, or that in his judgment the appointment of examiners is necessary to enforce the guarantees of the fifteenth amendment, "the Civil Service Commission shall appoint * * * examiners * * * to prepare and maintain lists of persons eligible to vote * * *".

2. Section 4(a): "* * * no citizen shall be denied the right to vote in any Federal, State, or local election because of his failure to comply with any test or device in [the states or subdivisions covered by the triggering provision of § 4(b)] * * *." Section 4(c): "The phrase 'test or device' shall mean any requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class."

3. Section 4(b) provides which areas are covered by the ban on tests and devices:

"* * * in any State or in any political subdivision of a state which (1) the Attorney General determines maintained on November 1, 1964, any test or device, and with respect to which (2) the Director of the Census determines that less than 50 per centum of the persons of voting age residing therein were registered on November 1, 1964, or that less than 50 per centum of such persons voted in the presidential election of November 1964. * * *."

4. Section 7(b), quoted in text infra. In political subdivisions where no voting examiners were appointed, the Attorney General sent a letter explaining the provisions of the Act to the registrar of voters for the subdivision, leaving to the registrar the striking of invalid requirements and the continued application of valid ones.

5. Section 9(b), quoted in text infra.

6. Section 7(a), quoted in text infra.

7. The qualifications prescribed by state law were, before the passage of the Act, and

This suit, consequently, is one to enjoin the federal examiners from registering persons who do not meet the requirements of state laws concerned with voter qualifications and disqualifications which are not deemed "tests or devices". Although this is not a mandamus action, and is not subject to the infirmities of such an action,[8] through injunctive processes it seeks, in effect, to require that the Commission's regulations and instructions conform with the express mandate of the Congressional act which authorizes them.

*The motion to remand*

■■■■ Plaintiff's arguments in support of the motion to remand are not persuasive. The Judicial Code's remand section provides:

> "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case * * *." 28 U.S. C.A. § 1447(c).

This suit was removed pursuant to 28 U.S.C.A. § 1442:

> "(a) A civil action * * * commenced in a State court against any of the following persons may be re-

moved by them * * *: "(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office * * *."

The Court concludes that federal voting examiners are persons acting under an officer of an agency of the United States. We also find, even assuming arguendo that the instructions given the examiners are invalid, that the examiners are acting under color of their office, within the meaning of the removal statute. The office of examiner is created by Section 6 of the Voting Rights Act,[9] and the basic duties of the examiners are stated in Section 7:

> "(a) The examiners * * * shall * * * examine applicants concerning their qualifications for voting. An application to an examiner shall be in such form as the Commission may require * * *
>
> "(b) Any person whom the examiner finds, in accordance with instructions received under section 9(b), to have the qualifications prescribed by State law not inconsistent with the Constitution and laws of the United States shall promptly be placed on a list of eligible voters."

are presently, considered to be one thing by parish registrars who, after the Act was passed, had only to strike any tests or devices being used (see n. 4), and another thing by the Attorney General, who made a *de novo* determination of what state law is. The age and residence requirements are set out in the Louisiana Constitution, Article VIII, §§ 1 and 16, and in the Louisiana Revised Statutes, § 18:31. It is not proper to enter into a discussion of this question at this time, but it appears that the conflict between the qualifications required by the federal examiners and those required by state registrars and alleged by plaintiff to be in keeping with state law arises from differing interpretations of the state constitution, statutes, leading cases, and opinions of the Attorney General, as to whether the qualifications must be met by date of registration or whether it suffices to meet them by the date of the next election.

8. It was held in Marbury v. Madison, 5 U. S. (1 Cranch) 137, 2 L.Ed. 60 (1803),

that the Supreme Court could not constitutionally be given original jurisdiction to mandamus a federal official. Then in McIntire v. Wood, 11 U.S. (7 Cranch) 504, 3 L.Ed. 420 (1813), it was held that Congress had not given the district (then circuit) courts mandamus power except in aid of its jurisdiction. Following these two cases, in McClung v. Silliman, 19 U.S. (6 Wheat.) 598, 5 L.Ed. 340 (1821), it was held that state courts could not mandamus federal officials; it was reasoned that if Congress had not given its own federal courts mandamus authority over federal officials, then the inference should be that state courts could not exercise that authority. To the extent that McClung rests on the determinative feature of McIntire that the federal courts had not been given mandamus jurisdiction, it may now be questionable in the light of Public Law 87–748, § 1(a), October 5, 1962, 28 U.S.C.A. § 1361, granting such jurisdiction.

9. See n. 1 supra.

Section 9(b), referred to therein, states:

"(b) The times, places, procedures, and form for application and listing pursuant to this Act and removals from the eligibility lists shall be prescribed by regulations promulgated by the Civil Service Commission and the Commission shall, after consultation with the Attorney General, instruct examiners concerning applicable State law not inconsistent with the Constitution and laws of the United States * * *."

Assuming arguendo, as above, that the Commission erred in instructing examiners concerning applicable state law, the examiners may not have been acting pursuant to the Act, but they were at least acting under color of office. The examiners' actions need not have been strictly in pursuance of a statute,[10] so long as what they did was causally connected with the performance of and justified by their duties.[11] Here there is no allegation that the acts complained of were personal ones done by the examiners as individuals,[12] rather than as federal agents, or that there was no official connection between the acts and the examiners' official duties.[13] The present

suit shows that the acts which provide the basis for this suit were done "not merely under color of [their] office, * * * not merely while [they were] engaged in performing [their] duties, * * * but [were] done under and by right of [their] office." State of Tennessee v. Davis, 100 U.S. 257, 261, 25 L.Ed. 648 (1879).

Voting examiners, therefore, are entitled to remove actions affecting their registration of voter applicants. Their right of removal is absolute. The fact that not all defendants joined in the petition for removal is immaterial; if the rule were otherwise, removal could always be defeated by plaintiff's joinder of a defendant who would not remove.[14]

Plaintiff argues in addition that removal is improper because the regulations under which the defendant examiners were acting are inconsistent with the Act, and contends that since this leaves the examiners in the position of violating state law, it is a matter to be heard by a state court. In suggesting this, plaintiff overlooks the plain language of the removal statute, which does not absolve defendants from fault, but merely provides a federal forum for a

10. Commonwealth of Virginia v. DeHart, 119 F. 626 (W.D.Va.1902).

11. State of Maryland v. Soper (No. 1), 270 U.S. 9, 33, 34, 46 S.Ct. 185, 70 L.Ed. 449 (1926). But see n. 13 infra.

12. State of Maryland v. Soper (No. 2), 270 U.S. 36, 46 S.Ct. 192, 70 L.Ed. 459 (1926). Plaintiff's own complaint makes it clear that the acts complained of were done in the examiners' official capacity.

13. Goldfarb v. Muller, 181 F.Supp. 41 (D. N.J.1959), involved the negligent driving of a post office truck. The court there distinguished between color of office and performance of duties (§ 1442(a) (3), covering officers of the courts of the United States, allows removal if the act complained of is in either category), and found no official connection between the act and the driver's official duties. See also Ebersole v. Helm, 185 F.Supp. 277 (E.D.Pa.1960) and State of Oklahoma v. Willingham, 143 F.Supp. 445 (E.D.Okla. 1956).

14. Bradford v. Harding, 284 F.2d 307, 310 (2nd Cir. 1960) : "When an action of the sort specified in § 1442 is brought against a federal officer and others, even the most literal reading would permit the federal officer alone to remove, as was held in Jones v. Elliot, D.C.E.D.Va.1950, 94 F. Supp. 567. For 'by them' means 'by any of the following persons' and the defendants who are not federal officers are not such persons. Moreover, the policy of the section would be frustrated if a plaintiff or a prosecutor, by joining non-federal defendants with no desire to remove, could retain the suit in a tribunal that might 'administer not only the laws of the State, but equally Federal law, in such a manner as to paralyze the operations of the government.' 100 U.S. at page 263." See also, 1A Moore's Federal Practice, 2nd ed., ¶ 0.164 [1], p. 825, text accompanying n. 19; and ¶ 0.168 [3.-2], p. 1175, text accompanying n. 19.

determination of whether fault exists.[15] It appears that in many types of suits against federal officials, including tort actions, criminal prosecutions, and requests for injunctions, the charges involve violations of state law. The determinative feature for removal is the status of the defendant as a federal official. Any contention that the character of the alleged violation is controlling ignores the plain language and well-known purpose [16] of the removal statute.

 In support of the motion to remand plaintiff also urges the general principle that federal courts are bound by state court interpretations of state law wherever state law is applicable. This Court certainly agrees with that principle, but fails to perceive its relevance to remand issues. Motions to remand are granted only when jurisdiction is absent in the federal court, and plaintiff's contention here concerns the merits, not jurisdiction. The 'federal officer' removal statute has long been held to be a jurisdictional grant in itself [17], in contradistinction to the general removal statute (28 U.S.C.A. § 1441(a)), which adds nothing to the jurisdictional grants otherwise enacted, such as federal question and diversity jurisdiction. No other interpretation is possible. Most cases considered after federal officer removal cannot be woven into any of the other jurisdictional patterns.[18] Having thus concluded that jurisdiction lies in this Court by virtue of 28 U.S.C.A. § 1442(a)(1), the motion to remand must respectfully be denied.

*The motion to dismiss*

The defendant federal examiners assert several grounds in support of their motion to dismiss. The Court will consider them separate and apart from the metaphysical problems involved in defendants' argument that the Court has jurisdiction *sufficient* to avoid remand, but *insufficient* to maintain it after removal.

 Primary emphasis centers on the contention that Section 14(b) of the Act permits suits of this nature only in the United States District Court for the District of Columbia. That section reads:

> "No court other than the District Court for the District of Columbia or a court of appeals in any proceeding under section 9 shall have jurisdiction to issue any declaratory judgment pursuant to section 4 or section 5 or any restraining order or temporary or permanent injunction against the execution or enforcement of any provision of this Act or any action of any Federal officer or employee pursuant hereto."

We are of the opinion that Section 14(b) is not applicable to the instant case. As seen from the preceding discussion of this suit's merits, this is an action to secure compliance with the express provisions of the Act, not one attacking the Act. It is simply a suit to determine the nature of the state law that Sections 7(b) and 9(b) of the Act dictate must be applied. It is not, therefore, an attempt to enjoin "the execution or enforcement of any provision" of the Act. Nor is it an attempt to enjoin "any action of any Federal officer or employee *pursuant [to]*" the Act. On the contrary, plaintiff is attempting, in effect, to *require* that the examiners act *pursuant to* the Act by listing only those persons having "the

15. Logemann v. Stock, 81 F.Supp. 337, 339 (D.Neb.1949).

16. State of Tennessee v. Davis, 100 U.S. 257, 262–263 (1879) ; State of Colorado v. Symes, 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932) ; Logemann v. Stock, 81 F.Supp. 337, 339 (D.Neb.1949).

17. Venable v. Richards, 105 U.S. 636, 26 L.Ed. 1196 (1882) ; Horne v. Aderhold, 1 F.Supp. 690 (N.D.Ga.1932) ; Pendleton v. Bussey, 30 F.Supp. 211 (N.D.Va.1939).

18. Neither diversity of citizenship nor the jurisdictional amount necessary for general federal question jurisdiction, as well as for diversity jurisdiction, is required.

qualifications prescribed by State law." [19] The Congressional policy behind Section 14(b), whether wise or not, is concerned with insuring uniformity of decisions in cases testing the Act's constitutionality.[20] Nothing appears in the legislative history to indicate that the determination of each state's law was to be reserved to the United States District Court for the District of Columbia. Whatever persuasiveness legislative history may possess when it seems to conflict with the plain language of an act, wherever it presents no conflict with a conclusion drawn from the language alone, a Court can readily accept both the history and the plain meaning of the language. No policy reasons appear to require that the United States District Court for the District of Columbia, rather than this Court, determine the nature of Louisiana law, and thus we do not feel that it is stressing form over substance to base our decision on a literal reading of the statute. Therefore, this Court holds that Section 14(b) of the Voting Rights Act does not preclude the granting of either declaratory or injunctive relief, or both, in this action.

■■■■ Other remaining jurisdictional barriers must be hurdled by plaintiff if this suit is to be maintained. In removal cases the jurisdiction of the federal court depends to a degree on the state court's jurisdiction, or, as the Supreme Court points out, "the jurisdiction of the federal court * * * is, in a limited sense, a derivative jurisdiction."[21] "A want of jurisdiction in the state court is not cured by the removal, but may be asserted after it is consummated."[22] On that basis the defendant examiners assert here their claim that a state court has no jurisdiction to enjoin the action of federal officials acting under the authority of federal law. Under the derivative jurisdiction concept, this defense may be raised in the federal court.

■■■■ State courts, as contrasted with those in the federal system, are courts of general jurisdiction, and can exercise full jurisdiction except in those areas where Congress vests the federal courts with exclusive jurisdiction, or where some overriding policy considerations dictate that state court jurisdiction be excluded. Congress refrained from lodging exclusive jurisdiction in the federal courts over actions to enjoin federal officials. These officials have instead been vested with the broad mantle of removal. Professor Moore, while recognizing principles of federal supremacy and against undue state interference

---

19. It can be argued that the defendants here, the examiners, are acting pursuant to the Act, because § 7(b) states they are to list those persons whom they find, "in accordance with instructions received under section 9(b)," to be qualified, and they did indeed follow those instructions. However, the Court finds that the part of § 7(b) not quoted above and not set off within the commas in the Act properly states the duties of the examiners, and must control: they are to list those qualified under state law. The phrase quoted above and set off within the commas in the Act is merely explanatory.

20. See the remarks of Senator Tydings reported at 111 Cong.Rec. 11068. See also, Joint Statement of Individual Views of the Committee of the Judiciary, Senate Report No. 162, Part 3, pp. 30–31, U.S. Code Cong. and Adm.News, 1965, p. ——. The Court also notes that Section 4(b) of the Act exempts certain determinations and certifications by the Attorney General and the Director of the Census from *any* type of review, but that the determination of applicable state law is not so exempted.

21. Lambert Run Coal Co. v. Baltimore and Ohio R. Co., 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922).

22. General Investment Co. v. Lake Shore & Michigan Southern Ry. Co., 260 U.S. 261, 288, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922).

with federal activities,[23] nonetheless concludes, based partially on this broad removal right, that sound federalism supports state court injunctive jurisdiction as a general proposition.[24] The Supreme Court has not passed squarely on the question. It has denied the jurisdiction of State courts to mandamus federal officials;[25] it has denied state courts the right to issue writs of habeas corpus with regard to persons in any type of federal custody;[26] and it has denied the power of state courts to review the discretion exercised by the Attorney General of the United States.[27] But as to circumstances under which an official of the United States may be enjoined, the Supreme Court has commented that "the action of an officer of the sovereign * * * can be regarded as so 'illegal' as to permit a suit for specific relief against the officer as an individual only if it is not within the officer's statutory powers * * *."[28]

Lower courts have stated the proposition or reached the conclusion that a state court has no jurisdiction to enjoin federal officials.[29] "[Based on] the well reasoned opinion by the trial court," the Fifth Circuit Court of Appeals affirmed State of Alabama ex rel. Gallion v. Rogers,[30] in which a state court action was brought to enjoin the Attorney General of the United States from exercising his statutory right to inspect voting records in the possession of state registrars. The matter was resolved on grounds that Congress had vested exclusive jurisdiction over these disputes in the federal courts, but the Court added that the state court's issuance of a temporary injunction and restraining order "was in violation of the basic legal principle that state courts are without jurisdiction to review the discretion or enjoin the acts of federal officers." 187 F.Supp. at 852.

Regardless of whether this is a "basic legal principle", the Supreme Court would recognize an "exception," and the present case contains an element sufficient to render the principle here inapplicable.

In the Voting Rights Act, Congress specifically required the federal examiners to comply with certain state laws. Having done so, it has impliedly authorized an action to test whether those state laws are being followed. First National Bank of Bay City v. Fellows, 244 U.S. 416, 37 S.Ct. 734, 61 L.Ed. 1233 (1917), stands squarely on point. There, Congress authorized the Federal Reserve Board to grant national banks the right to act as trustee, executor, administrator or registrar of stocks and bonds, so long as the banks' actions were not in contravention of State or local law. The Supreme Court, mindful of the necessity expressed in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), and Osborn v. Bank, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), to protect national banks from regulation and destruction by state authority, and to protect Congress from limitations on its constitutional powers imposed by state

23. 1 Moore's Federal Practice, 2nd ed., ¶ 0.6 [5], p. 241.

24. Id. p. 247.

25. See n. 8 supra.

26. Tarble's Case, 80 U.S. (13 Wall.) 397, 20 L.Ed. 597 (1872).

27. Rogers v. Calumet National Bank of Hammond, 358 U.S. 331, 79 S.Ct. 350, 3 L.Ed.2d 344 (1959).

28. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 701–702, 69 S.Ct. 1457, 1467, 93 L.Ed. 1628 (1949). This decision dealt with the power of federal courts, and thus the quote can be considered only as setting a maximum range of state court power without deciding if all possible power within that range may be exercised.

29. See Pennsylvania Turnpike Commission v. McGinnes, 179 F.Supp. 578 (E. D.Pa.1959), cases collected at 582.

30. 187 F.Supp. 848 (M.D.Ala.1960); 285 F.2d 430 (5th Cir. 1961).

authorities, nonetheless said that the state was, if not expressly, at least impliedly, authorized by Congress to consider and pass upon the question of whether the particular power was or was not in contravention of state law in an action in the nature of 'quo warranto,' 244 U.S. at 427–428, 37 S.Ct. 734, to enjoin and prevent violations of state law.[31]

This Court concludes that the theory, reasoning and holding of First National Bank of Bay City v. Fellows is applicable and controlling here, and that application of its doctrine does not conflict with the holding of the Fifth Circuit in Rogers, but remains compatible with it. Thus, where Congress directs a federal official to follow state law, a state court has jurisdiction to enjoin that official from acting contrary to state law, to the extent that the state law does not unduly interfere with federal authority or threaten federal supremacy, and is not otherwise unconstitutional or in violation of federal law.

It is arguable that the administrative remedy provided in Section 9 [32] of the Voting Rights Act for challenging the listing of eligible voters negates the implication that Congress intended to permit state courts to pass on whether the Commission's instructions agree with state law. The purpose of the administrative remedy is to decide questions of individual applicants' compliance with the qualifications required by the examiners, and not to pass upon what

those qualifications should be. "What is state law" is not a question that is within the particular competence of a Civil Service Commission hearing examiner who at the same time is an employee of the agency setting the requirements. It is a pure question of law, having nothing to do with a particular applicant's individual circumstances. Therefore, it is concluded that the implied Congressional authorization to the state court to decide the question is not in any way diminished.

Similar considerations prompt the Court to reject defendant examiners' argument that the doctrine of non-exhaustion of administrative remedies should be applied. We would quickly dismiss plaintiff to seek his Section 9(a) administrative remedy if his challenge involved the eligibility of one, several, or even many newly listed voters on the grounds of an examiner's misinterpretation of facts peculiar to the individuals involved or an examiner's misapplication of the law stated by the Commission. But where, as here, the total validity of the regulations and instructions is challenged by the plaintiff as being outside the plain language of the Act, a judicial determination is far preferable to an administrative hearing by an officer of the Commission who apparently has no jurisdiction to determine the validity of the instructions given to the examiners. In this situation, and with the understanding that the Supreme Court's statement of the "long settled rule of judicial ad-

---

31. See Johnson v. Manhattan Ry. Co., 289 U.S. 479, 502, 53 S.Ct. 721, 77 L.Ed. 1331 (1933).

32. Section 9: "(a) Any challenge to a listing on an eligibility list prepared by an examiner shall be heard and determined by a hearing officer appointed by and responsible to the Civil Service Commission and under such rules as the Commission shall by regulation prescribe. Such challenge shall be entertained only if * * *

supported by (1) the affidavits of at least two persons having personal knowledge of the *facts* [emphasis added] constituting grounds for the challenge * * *. A petition for review of the decision of the hearing officer may be filed in the United States court of appeals for the circuit in which the challenged person resides * * * but no decision of a hearing officer shall be reversed unless clearly erroneous. * * * *"

ministration" in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted" has been watered down or completely ignored in subsequent decisions, although occasionally applied in others,[33] this Court will not here demand exhaustion of administrative remedies.

In support of this ruling, the Court feels that the facts and holding in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), present a legal analogy too close to be ignored. Under the National Labor Relations Act, the only way to secure judicial review of a National Labor Relations Board certification of a bargaining representative is through Court of Appeals review of a subsequent Board order finding a refusal to bargain with the certified representative.[34] Yet, when the Board clearly violated the statutory rules for determining what types of employees could be grouped together in a bargaining unit, the Supreme Court upheld a suit in a District Court by a union directly attacking the Board's action. The Supreme Court held the suit was not a barred action for review, but rather constituted an action to strike an order of the Board made contrary to a specific prohibition in the act. The same is true here. If the charge that state law is not being followed proves accurate, then the federal examiners are proceeding in a manner contrary to the specific requirements of the Act. The remedy is a direct judicial determination of the question: "What is state law?" The motion of the defendant examiners to dismiss is therefore likewise denied.

33. See generally 3 Davis, Administrative Law Treatise, Chapter 20, and particularly § 20.01, text accompanying n. 2.

34. 29 U.S.C.A. § 160(f) : "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair

labor practice in question was alleged to have been engaged in * * *" Under this section, certification of a bargaining representative is not a final order, and no other section provides for review of such a certification. American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed 347 (1940).