REGAN, Judge.
The plaintiff, Leander H. Perez, Jr., District Attorney for the Parish of Plaque-mines, filed this suit against the defendants, Bruce Rhiddlehoover and Billy Travis, federal voting examiners assigned to serve in Plaquemines Parish pursuant to Section 6 of the Voting Rights Act of 1965,[1] and Roy Lyons, Registrar of Voters for Plaque-mines Parish, endeavoring to obtain an injunction restraining the defendants from registering and placing upon the voting rolls of the Parish certain individuals whom he asserts do not fulfill the suffrage requirements of state law.
Rhiddlehoover and Travis, the two federal examiners, removed the suit against them to the United States District Court for the Eastern District of Louisiana, on the following day.[2] No effort was made to remove the case in so far as it applied to the defendant, Roy Lyons, the Parish Registrar of Voters, who appeared herein and denied the pertinent allegations of the foregoing petition.
A temporary restraining order was issued against all of the defendants, and in the usual course of judicial proceedings, a preliminary injunction was issued restraining only the defendant, Lyons, from registering certain individuals in violátion of state law, that is, those persons who were not twenty-one years of age on the date of registration and who did not possess the residence requirement of one year in the state, six months in the parish, and three months in the precinct.
In addition thereto, the judgment also restrained the defendant from registering those persons whose application therefor failed to reveal their mother’s maiden name, their race, their occupation, the color of their eyes, and the name of their employer for use as a means of identification by an election commissioner.[3]
Finally, the judgment made the preliminary writ of injunction peremptory, and from that judgment, the defendant has prosecuted this appeal.
The record discloses that Rhiddlehoover and Travis were assigned to Plaquemines Parish in conformity with the Voting Rights Act of 1965 as federal examiners to register voters residing therein. Rhiddle-hoover’s testimony and the document produced by him in response to a subpoena *688 duces tecum reveals that he was instructed by the Civil Service Commission pursuant to Section 9(b) of this Act to place on the list of eligible voters any individual who would have attained the age of twenty-one years prior to the next election, and who would have met the residence requirements in the state, parish, and precinct prior to the next election. In other words, Rhiddle-hoover asserted that these persons were registered predicated upon a declaration of intent to reside within the parish for the required period of time.
The record also reflects that no entry was made on the registration form with respect to the color of the eyes of the applicant, his or her mother’s maiden name, his or her race, his or her occupation, or the name of his or her employer pursuant to state law, which is designed to facilitate the voting commissioners in identifying any individual who offers to vote in an election.
The record additionally reveals that the list of eligible voters certified by the federal examiners to the defendant merely contained the applicant’s name, address, age,[4] ward, precinct, political party, certificate of eligibility number, and the date of the certificate. The defendant registrar was not furnished with a sample of the registrant’s signature or his “mark” to be used for the purpose of comparison when the individual appeared to vote.
In limine, the defendant focuses his attack upon the lack of jurisdiction of a state court to render a judicial decree involving its interpretation of Louisiana law relative to the qualifications or requirements that an individual must possess in order to be eligible to register as a voter in this state. In other words, the defendant insists that since the enactment by the Congress of the Voting Rights Act of 1965, and since the State of Louisiana is encompassed by the coverage formula thereof, Section 4(h), “[n]o court other than the District Court for the District of Columbia or a court of appeals” possesses the jurisdiction to interpret the voter registration laws of Louisiana.
In any event, the answer to the foregoing argument has recently been provided by a United States District Court in the case of Perez v. Rhiddlehoover,[5] wherein the judge thereof rationalized with respect to the “Voting Rights Act of 1965” as follows:
“Primary emphasis centers on the contention that Section 14(b) of the Act permits suits of this nature only in the United States District Court for the District of Columbia. That section reads:
'No court other than the District Court for the District of Columbia or a court of appeals in any proceeding under section 9 shall have jurisdiction to issue any declaratory judgment pursuant to section 4 or section 5 or any restraining order or temporary or permanent injunction against the execution or enforcement of any provision of this Act or any action of any Federal officer or employee pursuant hereto.’
We are of the opinion that Section 14 (b) is not applicable to the instant case. As seen from the preceding discussion of this suit’s merits, this is an action to secure compliance with the express provisions of the Act, not one attacking the Act. It is simply a suit to determine the nature of the state law that Sections 7(b) and 9(b) of the Act dictate must be applied. It is not, therefore, an attempt to enjoin ‘the execution or enforcement of any provision’ of the Act. Nor is it an attempt to enjoin ‘any action of any Federal officer or employee pursuant [io]' the Act. On the contrary, plaintiff is attempting, in effect, to require that the examiners act pursuant to the Act by *689 listing only those persons having ‘the qualifications prescribed by State law.’ The Congressional policy behind Section 14(b), whether wise or not, is concerned with insuring uniformity of decisions in cases testing the Act’s constitutionality. Nothing appears in the legislative history to indicate that the determination of each state’s law was to be reserved to the United States District Court for the District of Columbia. Whatever persuasiveness legislative history may possess when it seems to conflict with the plain language of an act, wherever it presents no conflict with a conclusion drawn from the language alone, a Court can readily accept both the history and the plain meaning of the language. No policy reasons appear to require that the United States District Court for the District of Columbia, rather than this Court, determine the nature of Louisiana law, and thus we do not feel that it is stressing form over substance to base our decision on a literal reading of the statute. Therefore, this Court holds that Section 14(b) of the Voting Rights Act does not preclude the granting of either declaratory or injunctive relief, or both, in this action.
í¡< }{í jjc 5¡í
“It is arguable that the administrative remedy provided in Section 9[6] of the Voting Rights Act for challenging the listing of eligible voters negates the implication that Congress intended to permit state courts to pass on whether the Commission’s instructions agree with state law. The purpose of the administrative remedy is to decide questions of individual applicants’ compliance with the qualifications required by the examiners, and not to pass upon what those qualifications should be. ‘What is state law’ is not a question that is within the particular competence of a Civil Service Commission hearing examiner who at the same time is an employee of the agency setting the requirements. It is a pure question of law, having nothing to do with a particular applicant’s individual circumstances. Therefore, it is concluded that the implied Congressional authorization to the state court to decide the question is not in any way diminished.
# ❖ % £ ‡
“ * * * if fhg charge that state law is not being followed proves accurate, then the federal examiners are proceeding in a manner contrary to the specific requirements of the Act. The remedy is a direct judicial determination of the question: ‘What is state law ? ’ * * * ”
We pause to emphasize that the plaintiff herein does not assail the constitutionality of the Voting Rights Act of 1965. Instead, he stresses the fact that the qualifications prescribed by state law are not inconsistent but are compatible with the Constitution and laws of the United States. However, his principal complaint is predicated upon the fact that the defendant, Lyons, has acted in contravention of state law, which has not been superseded by the Voting Rights Act, in placing various individuals registered by the federal examiners on the voting rolls of Plaquemines Parish. In substantiation of this contention, *690 he points to Section 9(b) of the Act which reads:
“ * * * the Commission shall, after consultation with the Attorney General, instruct examiners concerning applicable State law not inconsistent with the Constitution and laws of the United States with respect to (1) the qualifications required for listing, and (2) loss of eligibility to vote.” (Emphasis added.)
In addition, Section 7(b) reads:
“Any person whom the examiner finds, in accordance with instructions received under section 9(b), to have the qualifications prescribed by State law not inconsistent'with the Constitution and laws of the United States shall promptly be placed on a list of eligible voters. * * * ” (Emphasis added.)
The foregoing sections of the Act obviously pronounce that the federal examiners are to register qualified voters in conformity with the voting requirements of state law. The identical conclusion was reached by the Supreme Court of the United States in the very recent case of South Carolina v. Kat-zenbach[7] wherein the organ for the court stated:
“The examiners who have been appointed are to test the voting qualifications of applicants according to regulations of the Civil Service Commission prescribing times, places, procedures, and forms. §§ 7(a) and 9(b). Any person who meets the voting requirements of state law, insofar as these have not been suspended by the Act, must promptly be placed on a list of eligible voters.”
We are therefore convinced that nothing contained in the Voting Rights Act of 1965 supercedes the requirements of age, residence, and voter identification prescribed by the law of the State of Louisiana.
We are likewise convinced as to what the law of Louisiana prescribes with respect to voter identification. R.S. 18: 235(2) (A) (k) provides that the following data shall be inscribed on each certificate of registration:
“Descriptive data to facilitate identification of the voter, including date of birth, place of birth, mother’s first or maiden name, color of eyes, sex, and race or color; occupation; and whether owner, tenant, boarder or other;”
In order to illustrate the wisdom of obtaining identifying data from the applicant, the evidence adduced at the trial hereof disclosed that there are three Maria Burases registered to vote in the Parish of Plaque-mines. Two are approximately of the same age and the only evidence, other than signature, that an election commissioner would have in his possession to insure that the proper Marie Buras was endeavoring to vote would be the identifying characteristics or data required by the foregoing statute. There is no dispute that each person is entitled to a vote, but only one vote, and that it is unjust and illegal for the same person to vote twice. It is obvious that if the same person did vote twice in the same election, the person in whose name he fraudulently voted would'thus be disenfranchised in that particular election. In an age when population is magnetically drawn to the cities, where life is impersonal and lacks the person to person quality which formerly existed, it is imperative that one in charge of a polling booth possess sufficient information to ascertain whether the person offering to vote is in fact that individual.
Section 4(a) of the Voting Rights Act of 1965 provides that no citizen shall be denied the right to vote because of his failure to comply with any “test or device”. The phrase “test or device” is defined in Section 4(c) thereof to mean any requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand or interpret any matter, (2) demonstrate any educational achievement or his knowledge of *691 any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class.
We have observed nothing in the prohibition against “tests or' devices” which is - incompatible with the Louisiana requirement that the registrant give information sufficient to identify him when he appears at the polling booth. This state statutory identification provision applies to all eligi-. ble voters, and in no way discriminates against any class, nor is it in any manner in conflict with Section 1 of the Fifteenth Amendment, which, of course, supersedes contrary exertions of state power. However, when a state exercises power wholly within the domain of state interest it is insulated from federal judicial review. On the other hand, we are fully cognizant of the fact that such insulation is not carried over when state power is used as an instrument for circumventing a constitutionally protected right, which, of course, has not occurred herein.
The only provisions in Louisiana law requiring our judicial interpretation are those relative to age and residence requirements.
Article 8, Section 1 of the Louisiana Constitution of 1921, provides, relative to qualifications of electors, as follows:
“Right to vote. After January 1, 1922, the right to vote in Louisiana shall not exist except under the provisions of this Constitution.
"Citizenship and age. Every Citizen of this State and of the United States, native born or naturalized, not less than twenty-one years of age, and possessing the following qualifications, shall be an elector, and shall he entitled to vote at any election in the state by the people:
(a) Residence. He shall have been an actual bona fide resident of the state for one year, of the parish six months, of the municipality in municipal elections four-months, and of the precinct, in which he-offers to vote, three months next preceding the election.” (Emphasis added.)
In conformity with this section, the legislature passed Act 197 of 1962,[8] which reads:
“Every citizen of the United States and. of Louisiana, native born or naturalized,. who is 21 years of age or zvho will have-attained the age of 21 years prior to the-next election and who possesses the following qualifications, and who has complied with the provisions of this Chapter, shall be eligible for registration as a. voter:
(1) He shall have been an actual bona fide resident of the state for one year,, of the parish for six months, and of the municipality in municipal elections four months, and of the precinct in which he offers to register as a voter, three months next preceding any election.” (Emphasis, added.)
The plaintiff insists that the rationale of the Constitution and the foregoing statute-makes it illegal to register an individual' before he has attained the age of twenty-one years and before he has acquired the residence requirements delineated in sub-paragraph (1) thereof.
•The preamble to Act 197 of 1962 states that it is 'an Act “to permit the registration of persons under the age of 21 years who will attain the age of 21 years prior to the next election.” This, in conjunction with the language embodied in the Act itself which stipulates that a person twenty-one-years of age “or who will have attained the age of 21 years” shall be eligible for registration as a voter, leaves no doubt in our minds that the legislature fully intended to provide for the registration in future of persons who will have attained the age of twenty-one years prior to the next election.
*692 Before focusing our attention upon another aspect of this case, we pause to point out that both the Constitution and the Statute are harmonious since neither permit an individual to vote until he has attained the age of twenty-one years.
The legislature, however, did not enact a provision for preregistration with respect to the residence requirements enunciated in both the Constitution and statutes. R.S. 18:31 clearly provides that an individual who is twenty-one years of age or who will have attained the age of twenty-one prior to the next election may preregister, but such a person must possess the residence requirements on the date of registration and not on the date of the next election. The wording of the statute, “and who possesses the following qualifications”, unequivocally reveals that on the date that the individual presents himself for registration he must have been a bona fide resident of the state for one year, of the parish for six months, of the municipality in municipal elections four months, and of the precinct in which he offers to register as a voter three months next preceding an election. The wisdom of the foregoing interpretation is readily apparent in the instance of an individual who will be twenty-one years of age prior to the next election and who leaves his precinct or parish before he acquires the statutory residence requirements; under these facts, he would be completely disenfranchised in an election which occurred before he completed residence requirements in the new precinct or parish, since he could not legally return to his old precinct or parish to cast his vote in conformity with R.S. 18:136.[9]
Therefore, any action taken by the defendant in placing upon the voter rolls in-dmduals who did not possess the necessary residence requirements on the date of their registration was in violation of the explicit requirements of Louisiana law.
For the foregoing reasons, the judgment of the lower court is reversed in so far as it denies the preregistration of persons who will have attained the age of twenty-one •years prior to the next election who possess the residence requirements on the date of registration, and in all other respects, the judgment is affirmed.
Affirmed in part and reversed in part.

. P.L. 89-110, 42 TJ.S.C. §§ 1971, 1973.

.See Perez v. Rkiddlehoover, 247 F.Supp. 65 (1965).

.See La.Const. of 1921, Art. 8, § 1, and R.S. 18:31 and 18:32.

. The exact date of birth was not obtained.

. 247 F.Supp. 65 (1965). In this connection see State of South Carolina v. Katzenbach, 383 U.S. 301, 86 S.Ot. 803, at p. 820, 15 L.Ed.2d 769 (1966).

. This is footnote No. 32 of the quoted opinion: “Section 9: ‘(a) Any challenge to a listing on an eligibility list prepared by an examiner shall be heard and determined by a hearing officer appointed by and responsible to the Civil Service Commission and under such rules as the Commission shall by regulation prescribe. Such challenge shall be entertained only if * * * supported by (1) the affidavits of at least two persons having personal knowledge of the facts (emphasis added) constituting grounds for the challenge * * *. A petition for review of the decision of the hearing officer may be filed in the United States court of appeals for the circuit in which the challenged person resides * * * but no-decision of a hearing officer shall be reversed unless dearly erroneous. * * * ’ ”

. 86 S.Ct. 803, 814 (1966).

. R.S. 18:31.

. “The removal of a registrant from one precinct to- another in the same parish does not deprive him of the right to remain as a legal registrant in the precinct from which he has removed until three months after the removal. The removal from one parish to another does not deprive any registrant therein of the right to remain as a legal registrant in the parish from which he has removed, for the purpose of voting for district officers to be elected in a district which includes the parish to which he has removed, or for state officers, whether the parish is in the same district or not, until he has acquired the right to register and vote for such officers in the parish to which he has removed.”